UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| v. | ) | Crim. No. 20-10314-LTS |
| ADMILSON PIRES. | ) | |

MEMORANDUM AND ORDER ON MOTION TO VACATE (DOC. NO. 249)
AND MOTION FOR IN CAMERA INSPECTION (DOC. NO. 251)

November 9, 2026

SOROKIN, J.

After a jury trial in September 2023, Admilson Pires was convicted of conspiring to commit, and in fact committing, sex trafficking of a minor. Doc. No. 173.[1] The following January, he was sentenced to eleven years' imprisonment. Doc. No. 199. He timely appealed, and the First Circuit affirmed his judgment of conviction. Doc. No. 244. Pires now challenges the effectiveness of his trial counsel, seeks in camera review of certain materials, and requests an evidentiary hearing. Doc. Nos. 249, 251. Having reviewed Pires's motions and the record in this case, including the First Circuit's decision and prior Orders of this Court concerning matters Pires references, the Court has determined that no response by the government is necessary. For the reasons that follow, Pires's motion is DENIED.

## I. BACKGROUND

Pires met the victim in this case in early 2019. At the time, the victim was fifteen years old and Pires was twenty-two. The victim had recently run away from a group home operated by the Massachusetts Department of Children and Families ("DCF"). Pires established a romantic

[1] Citations to items appearing on the Court's electronic docket ("Doc. No. __ at __") reference the document and page numbers assigned by ECF.

and sexual relationship with her lasting several weeks. Law enforcement located the victim and returned her to another DCF group home, but she remained in contact with Pires. Though she eventually returned to her mother's home, she ran away again in June 2019 after turning sixteen, and she moved in with Pires at his mother's home. The pair lived there only briefly, but it was long enough for Pires to orchestrate the victim's first commercial sexual encounter.

Lacking a job or another place to live after his mother made them leave her home, Pires and the victim slept in parked cars until Pires's friend, "Eli," offered them a place to stay. Eli made this offer despite knowing that the victim was a minor and a runaway. Accepting Eli's offer, Pires and the victim moved into a one-bedroom apartment rented by a woman who was in a relationship with Eli and who relied on him to supply her with drugs. The woman was not told the victim's real name and age. While the foursome stayed in this apartment together in July 2019, Pires orchestrated more commercial sexual encounters for the victim. There were sometimes multiple encounters a day. They generally occurred in the apartment's bedroom, and Pires and Eli were each present in the apartment during some of the encounters. The apartment was not large, and sounds carried from one room to the other.

Local police received and responded to a tip at the start of August 2019, visiting the apartment and speaking with both the victim and the woman who rented the apartment. Officers eventually took both women to the police station for further questioning. There, the victim disclosed her commercial sexual activity, and officers observed the other woman receive calls and text messages from both Pires and Eli. The victim was returned to her mother.

Pires was indicted on sex-trafficking offenses in December 2020, and he went to trial nearly three years later. The undersigned presided over the matter from start to finish. Upon Pires's arrest, an experienced Assistant Federal Public Defender ("AFPD") was appointed to

represent him. Doc. No. 8. She remained his counsel from his initial appearance through his trial and sentencing. In June 2023, a second experienced AFPD entered his appearance and assisted his colleague from then through sentencing. Doc. No. 107.

In the lead-up to his trial, Pires's attorneys sought to subpoena three years' worth of the victim's DCF records. The Court directed DCF to produce the records for in camera review, then narrowed the scope of its order in response to an objection by DCF. See Doc. No. 187 at 1. Thereafter, DCF mistakenly produced the broader set of records, promptly realized its error, and produced the narrower set of records the same day. Id. Before the error was noted, the Court undertook a limited review of the initial production, searching it for a handful of relevant words including Pires's name. Those searches yielded three documents, which the Court disclosed to Pires's counsel for review subject to a Protective Order that permitted counsel to discuss the information with Pires. Upon receiving the narrower set of records, the Court reviewed them, described their content in a sealed Order, and disclosed a subset of them to Pires's counsel subject to the same confidentiality protections. The Court also permitted Pires to recall the victim before trial ended in order to question her about certain information contained in the records. See Doc. No. 172. After trial, the Court ordered that sealed copies of both productions by DCF would maintained as part of the record pending any appeal and post-conviction motion practice. Doc. No. 187 at 2.

Meanwhile, Pires's four-day jury trial went forward. The jury heard from eight witnesses, including the victim, the woman who had allowed Pires and the victim to live in her apartment, and a Special Agent ("SA") with the FBI who provided general expert testimony concerning commercial sex trafficking. The Court rejected challenges Pires's counsel asserted pretrial and reiterated before the SA took the stand concerning several aspects of the SA's

testimony, including his description of what he termed "gorilla pimps" (a category into which the government did not even attempt to fit Pires here). See Doc. Nos. 144, 164. The government made no reference to "gorilla pimps" or the SA's testimony about that type of violent trafficker in its closing argument. Only Pires's counsel did so, pointing out that Pires was not accused of engaging in such conduct and urging that various scenarios the SA described had "nothing to do with this case." Doc. No. 242 at 154–55.

The jury convicted Pires of both charges—sex trafficking of a minor, and conspiracy to commit that crime—on September 22, 2023. Doc. No. 173. On January 8, 2024, this Court sentenced Pires to 132 months in prison, followed by five years of supervised release. Doc. No. 199. The term of incarceration was three years less than the low end of the recommended range calculated pursuant to the Sentencing Guidelines. See Doc. No. 198. Pires promptly appealed his conviction and sentence. Doc. No. 201. On May 28, 2025, the First Circuit affirmed, rejecting Pires's challenges to the sufficiency of evidence supporting his conspiracy conviction, the admission of the SA's testimony, and certain statements made by the government in its closing argument. Doc. Nos. 244, 245; United States v. Pires, 138 F.4th 649 (1st Cir. 2025). The Supreme Court denied certiorari on October 6, 2025. Doc. No. 248; Pires v. United States, 146 S. Ct. 253 (2025) (mem.).

Exactly one year later, on October 6, 2026, Pires signed and mailed his motion to vacate pursuant to 28 U.S.C. § 2255. Doc. No. 249 at 12. In his responses to the questions on the standard form, which this Court construes liberally, Pires challenges trial counsel's effectiveness in three ways, alleging counsel: 1) failed to contemporaneously object to unduly prejudicial expert testimony and, thus, "degraded the appellate standard of review to plain error"; 2) failed "to perform a reasonable pre-trial investigation" concerning Pires's "alleged co-conspirator"; and

3) "misadvis[ed]" him "regarding legal exposure on the conspiracy count . . . resulting in the rejection of a favorable plea offer." Id. at 4–7. Pires's 2255 motion was accompanied by a cover letter and brief memorandum of law, Doc. No. 250, as well as separate motions requesting an evidentiary hearing and in camera review of a "preserved [and] sealed electronic file" containing the DCF records for the victim who testified at trial, Doc. No. 251.

## II. DISCUSSION

The Court will summarize the relevant legal standards, then explain why those standards doom Pires's claims. Post-conviction relief pursuant to § 2255 is an extraordinary remedy, available only to a defendant who makes "a sufficient showing of fundamental unfairness." Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994). Pires bears the burden to establish by a preponderance of the evidence that he is entitled to relief. United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978). To assess whether he has met this burden, the Court generally must accept his factual averments as true, but "need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To make out a claim of counsel ineffectiveness, Pires "must show both deficient performance by counsel and resulting prejudice." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010); accord Strickland, 466 U.S. at 687. As the Supreme Court has emphasized, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

The "deficient performance" prong requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687; see Cullen v. Pinholster, 563 U.S. 170, 195 (2011) ("It is rare that constitutionally competent representation will require any one technique or approach." (citation modified)). To establish prejudice, Pires must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; accord Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007).

A court may resolve a § 2255 motion without a hearing if the defendant's allegations "contradict the record," McGill, 11 F.3d at 225, or "the district judge is thoroughly familiar with the case," having presided over the proceedings the defendant targets in his collateral challenges, Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988). A district judge "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

Applying these standards, the Court finds Pires is not entitled to the relief he seeks in any of his pending motions.

A. Failure to Object

In his first claim, Pires alleges his trial attorneys were ineffective for failing "to preserve Rule 403 objections to prejudicial expert testimony." Doc. No. 249 at 4.[2] He elaborates:

> Trial counsel rendered constitutionally deficient performance under Strickland v. Washington, 460 U.S. 668 (1984), by failing to make contemporaneous Rule 403 objections to inflammatory expert testimony regarding uncharged "gorilla pimp" human trafficking dynamics. On direct appeal the First Circuit observed that this testimony posed a risk of unfair prejudice and noted that a timely objection could properly have resulted in the testimony being stricken or limited. Counsel's failure

[2] Throughout this Memorandum and Order, the Court standardizes spelling and capitalization when it reproduces Pires's submissions.

> to preserve the specific objection degraded the appellate standard of review to plain error.

Id. In his supporting memorandum, Pires repeats the foregoing and further suggests that "an evidentiary hearing is necessary to determine whether counsel's omission resulted from non-strategic deficient performance rather than a reasonable tactical choice." Doc. No. 250 at 2.

This claim is meritless, and no evidentiary hearing is required in order to so conclude. The Court will assume, for present purposes only, that counsel's failure to object was not strategic, and that it was an oversight so unreasonable as to constitute deficient performance. In other words, the Court will give Pires the benefit of the doubt when it comes to Strickland's first prong.[3] Even so, however, his claim inevitably fails when it comes to Strickland's second prong. Cf. United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013) ("Failure to satisfy one of the Strickland prongs is fatal and, therefore, [courts] are free to tackle either prong first.").

Nothing in the record supports a finding that, had counsel objected to the "gorilla pimp" testimony, the jury would have reached a different verdict here—or the First Circuit would have reached a different conclusion on direct appeal. Pires's challenge centers on the application of a less favorable standard of appellate review, and the First Circuit's "note of caution" advising that "it would have been proper . . . to strike the [gorilla-pimp] testimony or give a curative instruction," had counsel objected. Pires, 138 F.4th at 674. But these aspects of the decision resolving his direct appeal do not establish the prejudice Strickland requires.

---

[3] This is a generous assumption, belied by the record. Two experienced AFPDs represented Pires at trial. They well knew that the government had no evidence of "gorilla pimping" nor any intention of arguing to the jury that Pires had engaged in such conduct. Once the Court ruled that the SA would be permitted to testify as a general matter, counsel may well have decided to use the fleeting "gorilla pimp" testimony to suggest, as they did in closing, that the facts of this case bore little resemblance to the SA's descriptions of common sex-trafficking patterns and dynamics.

The Circuit's warning of "a risk that" the challenged "testimony could amount to unfair prejudice," id. (citation modified), does not convey that Pires's conviction was bound up in that testimony, nor does it pronounce that vacatur would have followed from abuse-of-discretion review. Id. (citation modified). And the Court's review of the record of this trial over which the undersigned presided supplies no basis to assign such outcome-dispositive significance to this limited segment of trial testimony. The SA's testimony spans less than seventy pages of the trial transcript. Doc. No. 241 at 32–99. Of that, his "gorilla pimp" testimony on direct examination by the government began on one page and ended on the next, id. at 56–57, with two other passing references to threats or violence that might arise if a trafficker is "not a finesse pimp," id. at 62, 65.[4] The term "gorilla pimp" does not appear again in the transcript. The government did not mention that testimony in its closing, see Doc. No. 242 at 109–29, and defense counsel referenced "violence and threats" only briefly in distinguishing Pires from the "predatory pimps" the SA mentioned, id. at 154–55.

In these circumstances, Pires cannot prevail on his first counsel-ineffectiveness claim. See Rivera-Rivera v. United States, 927 F.3d 184, 187 (1st Cir. 2016) (emphasizing burden on defendant in § 2255 context to show "substantial, not just conceivable," likelihood of different result (citation modified)). Even if counsel's failure to contemporaneously object to this narrow slice of evidence amounted to deficient performance—and the Court is skeptical that it did—Pires has not shown, and the record does not suggest, any likelihood that the exclusion of such

[4] The SA spent far more time describing "finesse pimping" (which he identified as a distinct approach of sex traffickers who rely on grooming and persuasion rather than violence), Doc. No. 241 at 55–62, and the other fifty or so pages of his direct testimony concerned other topics, id. at 32–88. On direct appeal, the First Circuit rejected Pires's other challenges to the admission of the SA's expert testimony concerning sex-trafficking patterns and dynamics. Pires, 138 F.4th at 666–72.

testimony would have led to his acquittal.[5] Absent such a showing, this claim fails. See Strickland, 466 U.S. at 694.

B. Failure to Investigate and Plea Advice

The Court disposes of Pires's other two claims together, as they fail for the same reason. In his second claim, Pires alleges he received constitutionally ineffective assistance of counsel because his lawyers neglected to investigate Eli, his co-conspirator, "to disprove the core element of a shared criminal agreement." Doc. No. 249 at 5; Doc. No. 250 at 2. In his third and vaguest claim, Pires expresses a "conditional" challenge to his lawyers' representation "at pre-trial plea negotiations," alleging his lawyers "misadvis[ed] [him] regarding legal exposure on the conspiracy count versus pleading, resulting in the rejection of a favorable plea offer," but only "[t]o the extent formal pre-trial plea offers were communicated by the government." Doc. No. 249 at 7; Doc. No. 250 at 2.

A defendant seeking to collaterally challenge his conviction pursuant to § 2255 must "state the facts supporting each ground" for relief he pursues in his motion. Rules Governing § 2255 Cases, Rule 2(b)(2), 28 U.S.C. foll. § 2255. Where a motion advances "only bald assertions of cognizable claims without adequate supporting factual allegations," that much of the motion may be deemed "inadequate on its face." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); cf. Rules Governing § 2255 Cases, Rules 4(b), 5(a) (providing for initial review by presiding judge and dismissal without requiring an answer where "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings" that defendant is not entitled to relief).

[5] The Court notes that the jury asked three questions before reaching a verdict, none of which remotely suggested a focus on any issue that implicated the SA's testimony. Doc. No. 173-1.

Here, Pires states his second and third claims using vague and/or conclusory language, offering no specific facts or information to support them despite bearing the burden to do so under the law and the governing rules. As to the failure-to-investigate claim, Pires does not describe what his counsel did, what they refused to do, or what he believes they should have done. He does not explain what any further investigation would have yielded, nor does he supply any basis to believe that Eli would have appeared as a witness or otherwise produced admissible evidence that would have aided Pires's defense. And he concedes that the trial record included "testimony confirming that law enforcement searches of Eli's electronic devices produced no incriminating evidence from the relevant timeframe." Doc. No. 249 at 5.

As for his plea-related claim, Pires only and admittedly speculates that the government might have presented a plea offer. Id. at 7. He summarily accuses counsel of "misadvising" him about his "legal exposure on the conspiracy count," without describing the incomplete or erroneous advice or establishing his reliance on it. He does not claim an offer existed, does not identify any plea terms to which he would have agreed, and does not provide any other basis for believing that his trial attorneys neglected to discuss with him this or any other material consideration bearing on his decision to go to trial.

More is required of a defendant seeking relief pursuant to § 2255, even one who is proceeding pro se. Neither of these facially inadequate claims merit discovery, further proceedings, or relief.

C. Other Motions

Having rejected Pires's three claims for reasons that are apparent from his submissions, the record, and the Court's familiarity with the proceedings in this case, no evidentiary hearing is warranted here. See McGill, 11 F.3d at 225–26. His motion seeking such a hearing (Doc. No. 251) is therefore DENIED.

One matter remains. Pires urges the Court to conduct an in camera inspection of the DCF records it received concerning the victim and maintained under seal following the trial. Doc. No. 251 at 1. This request is DENIED. The Court has reviewed the filings, transcripts, and orders concerning the DCF records, thereby refreshing its recollection of how this issue evolved and was resolved at trial. That review confirms the absence of any basis for expanding the record for purposes of a § 2255 claim or otherwise revisiting the DCF materials. The Court received and considered the relevant records during trial, and it disclosed to the defense those materials it deemed pertinent and subject to disclosure under the law (i.e., as potentially exculpatory or impeachment evidence). When it disclosed those materials, it did so pursuant to confidentiality limitations that permitted defense counsel to discuss the information with Pires. See Doc. No. 187. Nothing in Pires's motion supports his assertion that further review of the DCF materials "is necessary to determine if" they include information that would "corroborate the defense theory regarding the absence of co-conspiratorial control." Doc. No. 251 at 1.

## III. CONCLUSION AND ORDER

In sum, two of Pires's claims are facially inadequate, and the record refutes the only claim he has advanced with sufficient factual and legal specificity. Because Pires has identified no prejudicial deficiency in counsel's performance (assuming there was any deficiency at all), his motion to vacate pursuant to § 2255 (Doc. No. 249) is DENIED. His requests for in camera review and an evidentiary hearing are also DENIED. And, as Pires has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge